***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : <br> CAROL GRUBB, *on behalf of herself* : <br> *and all those similarly-situated*, : <br> : <br>          Plaintiff, : <br> : <br> v. : <br> : <br> GREEN TREE SERVICING, LLC, : <br> : <br>          Defendant. : <br> _____: | Civ. Action No. 13-07421 (FLW) <br><br> **OPINION** |

**WOLFSON, District Judge**:

Plaintiff Carol Grubb ("Plaintiff") brings this putative class action, on behalf of herself and all other similarly situated individuals, against Defendant Green Tree Servicing ("Defendant" or "Green Tree"), a mortgage loan servicer, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ("FDCPA"), for failing to effectively convey the alleged debt owed, and providing misleading information that is confusing to the least sophisticated debtor in two separate debt collection letters. In the instant matter, Defendant moves for summary judgment, arguing, *inter alia*, that: (a) Plaintiff lacks standing; (b) the FDCPA is inapplicable; and (c) the debt collection letters comply with the FDCPA. In response, Plaintiff opposes the motion, and moves for class certification. For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion for Class Certification is **GRANTED**.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff is a resident of Monmouth County, New Jersey, and Green Tree Servicing ("Green Tree") is a mortgage loan servicer, with its principal place of business located in St. Paul, Minnesota. On May 1, 2013, Bank

of America transferred the servicing rights of a mortgage, on which Plaintiff had defaulted, to

Green Tree. Defendant's Statement of Undisputed Facts ("Def.'s Statement of Facts"), ¶ 6, Ex. C

to Ex. 1. At the time of transfer, it is not disputed that Plaintiff had not made a payment towards

her mortgage in more than twelve months, and the loan was past due in an amount exceeding

$75,000. Subsequently, Green Tree sent Plaintiff two letters, dated May 1, 2013, and May 3, 2013,

respectively, informing Plaintiff, among other things, of the debt allegedly owed and the service

transfer. *Id.* ¶¶ 6-7, Ex. C, D to Ex. 1. The basis of Plaintiff's claims stem from the content of these

letters.

The May 1, 2013 letter, which was Green Tree's initial communication with Plaintiff,

contains three relevant parts. Specifically, the first paragraph of the letter informs Plaintiff of the

servicing transfer: "Dear Valued Customer: The servicing of your account was transferred from

Bank of America N.A. to Green Tree on May 1, 2013. We are pleased to Welcome you to Green

Tree." *Id.* ¶ 6, Ex. C to Ex. 1. In the following paragraph, Green Tree includes a standard debt

validation notice, wherein Plaintiff's rights, pursuant to the FDCPA, are explained:

> As of April 30, 2013, you owe $307,606.12. Because of interest, late charges, and
> other charges that may vary from day to day, the amount due on the day you pay
> may be greater, hence, if you pay the amount shown above, an adjustment may be
> necessary after we receive your check, in which event we will inform you before
> depositing the check for collection. For further information, contact customer
> service at the address or toll free number listed above.

> Unless you notify us within thirty (30) days after receiving this notice that you
> dispute the validity of this debt, or any portion of the debt, we will assume that the
> debt is valid. If you notify us in writing within thirty (30) days of receiving this
> notice, we will obtain verification of the debt (or obtain a copy of a judgment, if the
> debt has been reduced to judgment) and mail the verification to you. In addition,
> upon your written request within thirty (30) days after receiving this notice, we will
> also provide you with the name and address of the original creditor, if different
> from the current creditor.

*Id.* Finally, the letter concludes with the following statement, written in bold print: "**This communication is from a debt collector. It is an attempt to collect a debt and any information obtained will be used for that purpose.**" *Id.*

Two days later, on May 3, 2013, Plaintiff received an additional two-page letter from Green Tree. *Id.* ¶ 7, Ex. D to Ex. 1. The letter, once again, begins by informing Plaintiff of the servicing transfer: "Welcome to Green Tree. The service of your mortgage loan—that is, the right to collect loan payments from you—is being transferred from Bank of America to Green Tree effective May 1, 2013." *Id.* The letter also contains a detachable payment stub stating "INITIAL PAYMENT COUPON" and "TOTAL DUE $2,124.03." *Id.* On the following page, information pertaining to the calculation of the $2,124.04 figure and Plaintiff's delinquent Mortgage is included:

> **Monthly Payment Information**:
> Principal Payment Amount: $204.09
> Interest Payment Amount: $1,208.31
> Escrow Payment Amount: $711.63
> Monthly Payment Amount: $2,124.03
>
> **Current Loan Information**:
> Current Interest Rate: 6.87500%
> Principal Balance: $210,905.11
> Escrow Balance: $33,924.52

*Id.* ¶¶ 7-8, Ex. D to Ex. 1. Underneath this information, in a box prominently displayed on the letter, Green Tree provides an explanation of Plaintiff's rights in accordance with Section 6 of the Real Estate Settlement Procedures Act ("RESPA"):

NOTICE ABOUT YOUR RIGHTS

> You should be aware of the following information, which is set out in more detail in Section 6 of [RESPA]:
>
> . . .
> Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights. If you send a 'qualified written request' to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within

20 Business Days of receipt of your request. A 'qualified written request' is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176.

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During the 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

. . .

Section 5 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

*Id.*, ¶ 7, Ex. D to Ex. 1. Finally, in the last sentence of the letter, Green Tree again states: "**This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.**" *Id.*

As a result of these communications, Plaintiff filed a two-count Complaint, on behalf of herself and all other similarly situated individuals. In Count I, Plaintiff alleges violations of 15 U.S.C. § 1692e, which prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt"; and in Count II, Plaintiff avers violations of 15 U.S.C. § 1692g, which requires debt collectors to provide consumers, *inter alia*, with written notice of the amount of debt owed, either in the initial communication or within five days after the initial communication with a consumer, in connection with the collection of any debt. In that regard, Plaintiff raises three theories as to Green Tree's liability under the FDCPA: (1) the May 1 Letter's failure to state the amount of debt as of the date of the letter; (2) the May 1

Letter's failure to explain how the purported amount of debt was calculated; and (3) the amount of debt provided in the May 1 Letter was contradicted by the amounts listed in the May 3 Letter.

Subsequent to the filing of this action, Green Tree filed a motion for dismissal, wherein it argued that Plaintiff's claims under the FDCPA were insufficiently pled, because they do not arise from a communication pertaining to the collection of a debt. In an Opinion issued on July 24, 2014, the Court denied Green Tree's motion, on the basis that the May 1 Letter was subject to the FDCPA. The Court further found that Plaintiff adequately stated a claim under §§ 1692g and 1692e, on two separate grounds: (a) the May 1 Letter failed to explain how Plaintiff's alleged debt was calculated, and (b) Green Tree's communications were confusing under the least sophisticated debtor standard, as they contained inconsistent information pertaining to the amount of the debt.

After the close of discovery, Defendant now moves for summary judgment with respect to Plaintiff's FDCPA claims, arguing, *inter alia*, that Plaintiff lacks standing under Article III of the Constitution. Defendant further argues that it is not required to comply with the FDCPA's regulations, because it meets that statute's definition of a creditor, and that Defendant's communications with Plaintiff are not contradictory. In response, Plaintiff opposes the motion, and moves for class certification pursuant to Federal Rule of Civil Procedure 23, with respect to the following class of individuals:

> All New Jersey consumers who were sent initial letters and/or notices from GREEN TREE concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was transferred to Green Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated.
>
> and/or
>
> All New Jersey consumers who were sent initial letters and/or notices from GREEN TREE concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was

transferred to Green Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated, and was sent an additional letter/notice within 30 days of the initial letter/notice which provided 'Monthly Payment Information', and/or the 'Principal Balance' and/or the 'Escrow Balance."

Plaintiff's Motion for Class Certification is opposed by Defendant. I turn first to Defendant's Motion for Summary Judgment.[1]

## DISCUSSION

## I. SUMMARY JUDGMENT

### A. Standard of Review

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*,

---

[1] During the Pendency of this Motion, Defendant filed a sur-reply, which the Court has considered.

477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact"; however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### B.    FDCPA Statutory Overview

The Fair Debt Collection Practices Act "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013) (citing 15 U.S.C. § 1692). By its terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while insuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692. Relevant to the present matter, the Act requires that within five days of the initial communication with a consumer in connection with the collection of a debt, debt collectors must provide the consumer with written notice containing certain information regarding the debt. 15 U.S.C. § 1692g. Additionally, the Act prohibits the use of any "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

The statute creates a private right of action against debt collectors who fail to comply with its provisions. 15 U.S.C. § 1692k; *Marx*, 133 S. Ct. at 1171 n.1; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3rd Cir. 2006). To state a claim under the FDCPA, a plaintiff must establish that "(1) he or she is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." *Grant v. JP Morgan Chase Bank*, No. 12-6248, 2013 U.S. Dist. LEXIS 51551, at *5 (D.N.J. Apr. 10, 2013) (quoting *Berk v. J.P.Morgan Chase Bank, N.A.*, No. 11-2715, 2011 U.S. Dist. LEXIS 109626, at *8 (E.D. Pa. Sept. 26, 2011) (citing 15 U.S.C. §§

1692a-o)). Additionally, "[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt'." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3rd Cir. 1987).

Because the FDCPA is a remedial statute, the Third Circuit has construed its language broadly so as to give effect to its purpose. *Brown*, 464 F.3d at 453. Accordingly, courts analyze "any lender-debtor communications potentially giving rise to claims under the FDCPA" from the perspective of an objective "least sophisticated debtor." *Id*. at 454. The Third Circuit has expounded that the least sophisticated debtor standard "is lower than the standard of a reasonable debtor" such that "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3rd Cir. 2008) (internal quotations and citations omitted). Applying this standard gives effect to "the basic purpose of the FDCPA: . . . to protect all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious, from abusive debt collection practices." *Brown*, 464 F.3d at 454 (internal quotations and citations omitted). Nevertheless, "the standard does not go so far as to provide solace to the willfully blind or non-observant." *Caprio v. Healthcare Revenue Recovery Grp.*, 709 F.3d 142, 149 (3rd Cir. 2013) (quoting *Campuzano-Burgos v. Midland Mgmt. Inc.*, 550 F.3d 294, 299 (3rd Cir. 2008)). In other words, although the least sophisticated debtor standard is "less demanding than one that inquires whether a particular communication subject to the FDCPA would mislead or deceive a reasonable debtor," the least sophisticated debtor "is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care." *Id*. at 149 (internal quotations and citations omitted). Accordingly, the debt collector "cannot be held liable for bizarre or idiosyncratic interpretations." *Id*. (citing *Wilson v. Quadramed Corp*., 225 F.3d 350, 354-55 (3rd Cir. 2000)). Indeed, the least sophisticated debtor is expected to read any

collection notice in its entirety. *Id*. (citing *Lesher v. Law Offices of Mitchell N. Kay*, 650 F.3d 993, 997 (3rd Cir. 2011)).

Furthermore, under the Third Circuit's FDCPA jurisprudence, because the "least sophisticated debtor" is an objective standard, the determination of how debt collection communications would be perceived by the "least sophisticated debtor" is a question of law. *See Wilson*, 225 F.3d at 353 n.2; *Caprio*, 709 F.3d at 147; *see also Bodine v. First Nat'l Collection Bureau, Inc.*, No. 10-2472, 2010 U.S. Dist. LEXIS 131352, at *8 (D.N.J. Dec. 13, 2010) (citing *Wilson*, 225 F.3d at 353 n.2) ("The question of whether a collection letter or notice violates the provisions of the FDCPA is a question of law to be determined by the Court.").

### C.     Standing

As a threshold issue, Defendant first contends that Plaintiff lacks standing to bring this action under Article III of the Constitution. Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Motion for Summary Judgment"), at 3. For support, Defendant argues that Plaintiff's alleged harm is neither concrete nor particularized, because Plaintiff has failed to assert an actual injury in connection with the complained-of-conduct. *Id.* at 6. Defendant reasons that its communications did not prevent Plaintiff from taking any action on the loan, and that Plaintiff was not subjected to any financial harm. *Id*. Therefore, Defendant avers that Plaintiff's allegations of harm amount to procedural violations and, as such, are insufficient for this Court to find standing. *Id*. at 7. The Court disagrees.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Indeed, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. 1540, 1547 (U.S. 2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction

had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alteration in original).

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

To establish an injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is '*de facto*'; that is, it must actually exist"— it cannot be merely "abstract." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548). Moreover, a harm need not be tangible, to be "concrete." To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, consideration should focus on whether the purported injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citation omitted). In that connection, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration in original).

Importantly, in the context of a statutory violation, allegations of a "bare procedural violation [under the statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated differently, not every "bare" violation of a right granted by a statute is inherently injurious. Rather, such a violation must result in a "concrete" harm. That requirement remains in circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural. A "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *In re Michaels Stores, Inc.*, No. 14-7563, 2017 U.S. Dist. LEXIS 9310, at *17 n.12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters.*, LLC, No.16-0374, 2016 U.S. Dist. LEXIS 143044, at *3 (S.D. Tex. Oct. 3, 2016)) (internal citations omitted) (alteration in original). On the other hand, a "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3) (internal citations omitted) (alteration in original). "To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing." *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3).

In the instant matter, the parties' dispute is confined to the first element of standing, or whether Plaintiff has properly established an injury-in-fact. Indeed, Defendant does not challenge the remaining elements, *i.e.,* causation and likelihood of redress. In that regard, the Court, on this motion, must determine whether the alleged harm concerns a legally protected interest under the FDCPA. District courts, within this circuit, that have recently considered this very issue, have found that the protections of 15 U.S.C. § 1692e are substantive in nature. *See, e.g.*, *Bock v. Pressler & Pressler, LLP,* No. 11-7593, 2017 U.S. Dist. LEXIS 81058 (D.N.J. May 25, 2017); *Thomas v. Youderian*, No. 16-1408, 2017 U.S. Dist. LEXIS 16585 (D.N.J. Feb. 3, 2017); *Carney v. Goldman*, No. 15-260, 2016 U.S. Dist. LEXIS 177087 (D.N.J. Dec. 22, 2016). Likewise, I find that the FDCPA's protections under § 1692e are substantive, and thereby, hold that Plaintiff has standing to bring her FDCPA claim.

Specifically, Plaintiff asserts that she received two letters from Green Tree, dated May 1, 2013 and May 3, 2013, respectively, containing information in regard to her delinquent Mortgage with Bank of America. Plaintiff's Counter Statement of Material Facts ("Pl.'s Statement of Facts"), ¶¶ 7, 12, Ex. A, B. According to Plaintiff, these letters were confusing; they contained various numeric figures, each of which could have plausibly represented the alleged debt owed. In that connection, Plaintiff maintains that she was unable to ascertain the balance of her loan, in order to satisfy her financial obligation under her defaulted mortgage. *Id.* ¶ 21. Thus, by failing to clearly state the amount of her debt, Plaintiff alleges that Green Tree acted in a "false, deceptive, or misleading" manner, in violation of § 1692e of the FDCPA.

Plaintiff's purported injury here is sufficient to establish standing under Article III. First, Plaintiff's allegations are not conjectural or hypothetical; instead, Plaintiff identifies concrete, albeit intangible, harm. Indeed, Plaintiff asserts that Green Tree acted in a false, deceptive, and/or

misleading manner, because the debt collection letters at issue "fail[ed] to accurately state the amount of the debt" owed to Green Tree. *See* Amended Complaint, ¶ 66. Allegations of this nature, which ostensibly constitute a violation under § 1692e of the FDCPA, are sufficient for the purpose of establishing concreteness. *Youderian*, 2017 U.S. Dist. LEXIS 16585, at *16 (Finding that recent cases, in which the dispute concerns the accuracy of the debt provided in a debt collection letter under 15 U.S.C. § 1692e, "trend in favor of finding concrete injury under the FDCPA . . . ."); *Bock*, 2017 U.S. Dist. LEXIS 81058, at *16 ("[A]t the very least, the protection that section 1692e provides to shield debtors . . . from a debt collector's use of any 'false, deceptive, or misleading representation[s] or means in connection with the collection of any debt,' is substantive."); *Prindle v. Carrington Mortg. Servs., LLC*, No. 13-1349, 2016 U.S. Dist. LEXIS 108386, at *28 (M.D. Fla. Aug. 16, 2016) ("Through § 1692e, Congress . . . elevated [an existing concrete harm] to the status of a 'legally cognizable injur[y]' [] by providing consumers with a new, substantive right . . . ."). Accordingly, because Plaintiff's purported injury relates to a false, deceptive, and/or misleading debt collection practice, which is prohibited under § 1692e of the FDCPA, this prong of standing is satisfied.

Moreover, Plaintiff's allegations are clearly particularized, as they "affect [Plaintiff] in a personal and individual way." *Nickelodeon*, 827 F.3d at 272. Indeed, Plaintiff's has clearly demonstrated that she received a communication from Green Tree, in which Green Tree attempted to collect on a debt that Plaintiff allegedly owed. Accordingly, Plaintiff's alleged injury also meets the second prong of standing. *Youderian*, 2017 U.S. Dist. LEXIS 16585, at *9 (finding that the plaintiff's "alleged injury [was] particularized," since the plaintiff "personally received the [debt collection letter at issue], and the debt reported therein [was] said to be his"); *Bock*, 2017 U.S. Dist. LEXIS 81058, at *12 n.5 (holding that the alleged harm was particularized, because the debt

collector filed a "complaint against [the plaintiff], seeking to collect from [the plaintiff] a debt that he allegedly owed."). Thus, since Plaintiff's alleged injury is both concrete and particularized, Plaintiff has standing to bring this suit against Green Tree, pursuant to § 1692e of the FDCPA. Indeed, the same result obtains with respect to Plaintiff's allegations under § 1692g, because they are based upon the same facts and circumstance underlying Plaintiff's § 1692e claim. *Youderian*, 2017 U.S. Dist. LEXIS 16585, at *16 ("Where the underlying theory is one of falsity or deception, however, the standing analysis under [the FDCPA's various provisions] should be similar.");

Moreover, contrary to Defendant's position, Plaintiff's inability to establish that she suffered an economic loss as a result of Green Tree's debt collection letters, is of no significance. As stated above, the FDCPA clearly affords alleged debtors, such as Plaintiff, with the substantive right to be free from abusive debt collection practices. Therefore, because Plaintiff's allegations, in of themselves, demonstrate abusive debt collection practice under the FDCPA, Plaintiff "need not allege any additional harm." *Carney*, 2016 U.S. Dist. LEXIS 177087, at *15 (internal quotations and citation omitted); *Bock*, 2017 U.S. Dist. LEXIS 81058, at *22 ("Under *Spokeo*, [the plaintiff] need not establish any additional harm to surpass the standing threshold of concrete injury.") (internal quotations and citation omitted); *Prindle*, 2016 U.S. Dist. LEXIS 108386, at *31 ("As the object of allegedly false, deceptive, and/or misleading representations in connection with the collection of a debt . . . [the plaintiff] need not allege any *additional* harm beyond the one Congress has identified") (internal citation and quotations omitted) (alteration in original).

### D.  Green Tree is a Debt Collector

Next, Defendant argues that, even if there is standing, it is a creditor, and, therefore, the FDCPA is not applicable in this case, as that statute only governs debt collectors' activities. Def.'s Motion for Summary Judgment, at 14-18. According to Defendant, the FDCPA only applies where

an entity acquires a debt, for the purposes of collection. *Id*. at 15. Defendant argues that, if an entity continues to "service" an acquired debt, that entity steps into the shoes of the original creditor, and need not comply with the FDCPA's requirements. *Id*. Defendant also submits that Plaintiff "cannot prove that the Loan was assigned to Green Tree solely for collection given that Green Tree engage[d] in extensive loss mitigation outreach with her after it acquired the servicing rights." *Id*. In support, Defendant refers to two separate occasions, approximately eight months after the loan was assigned, where it offered Plaintiff a loan and a trial modification, for the purpose of assisting Plaintiff with her mortgage. *Id.* at 15-16. Defendant argues that, based on that conduct, it should be treated as a creditor. Defendant's argument lacks merit.

The Third Circuit has long recognized that the provisions of the FDCPA "generally only apply to 'debt collectors.'" *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)). "Debt collector" is defined under the statute as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. §1692a(6). Congress created a distinction between "debt collectors" and "creditors" to reflect the real difference in incentives between collection actions taken by the actual owner of a debt and those undertaken by one who merely collects on behalf of others.

The FDCPA defines a "creditor" as:

> Any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. §1692a(4). "[C]reditors who collect in their own name and whose principal business is not debt collection . . . are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill." *Pollice*, 225 F.3d at 403 (quoting *Aubert v. American Gen. Fin. Inc.*, 137 F.3d 976, 978 (7th Cir. 1998)). The same rationale governing creditors applies to loan servicers of debts who were not the original holders of a debt, but became so after an assignment while the loan was still current (not in default). *Id.* (quoting Hon. D. Duff McKee, *Liability of Debt Collector to Debtor under the Federal Fair Debt Collection Practices Act*, 41 Am. Jur. Proof of Facts 3d 159, at § 3 (1997)) ("[T]he assignee of a debt who acquires it before default is considered the owner of the debt and may pursue collection without concern for the limitations of the FDCPA.").

Post-assignment servicers and owners of debts that were in default at the time of assignment, however, are treated differently under the law. "[A]n assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Id.* In that regard, courts must determine whether the new servicer or owner of the debt falls within the FDCPA's definition of a debt collector. In that connection, a court must inquire, as a factual matter, whether (a) "the principal purpose" of the servicer's or owner's business "is the collection of any debts . . . owed or due another," or (b) whether the servicer or owner "regularly collects or attempts to collect . . . debts owed . . . or due another." 15 U.S.C. § 1692a(6). Stated differently, when an assignee acquires a debt in default, that assignee would be treated as a debt collector under the FDCPA if the principal purpose of that assignee's business is to collect debts owed another, or if that assignee regularly collects debts owed another, in the course of business. *Id.*

Here, Green Tree has failed to establish that it is exempt from the FDCPA. First, although Green Tree operates as a loan servicer, it does not automatically fall within the FDCPA's definition

of a creditor. Significantly, Green Tree acquired the right to service Plaintiff's Mortgage *after* Plaintiff had defaulted on the loan. Def.'s Statement of Facts, ¶ 5. Indeed, Green Tree, by its own admission, concedes that "Plaintiff was delinquent under the Loan at the time that Green Tree acquired the servicing rights from Bank of America" on May 1, 2013. *Id*. Therefore, because the Mortgage was not current at the time of transfer, Green Tree cannot claim creditor status simply because it provided Plaintiff with various loan mitigation options, approximately eight months after the loan was transferred from Bank of America. Rather, because the loan was in default, Green Tree would only qualify as a creditor, if it does not provide debt collection services as its principal purpose of business, or regularly collect on defaulted loans.

Tellingly, Green Tree fails to proffer any evidence, such as a sworn affidavit or any corporate document demonstrating the extent to which Green Tree services loans that are in default. Indeed, Green Tree's own submission, in the form of a declaration provided by Stewart Derrick, a "Corporate Litigation Representative" at Green Tree, creates a genuine issue of material fact, preventing the resolution of this dispute on this motion. Declaration of Stewart Derrick (dated July 7, 2016) ("Derrick Dec."), ¶ 1.[2] Specifically, Mr. Derrick, in describing Green Tree's business operations, states as follows: "Green Tree is in the business of servicing both performing and *non-performing* loans. Among other things, Green Tree collects mortgage, principal and escrow payments from the borrower and *remits portions of these funds to various entities*." *Id*. ¶ 4

---

[2]     Plaintiff contends that the declaration of Mr. Derrick should be stricken. Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("Pl.'s Opp'n to Summary Judgment"), at 13-17. In so arguing, Plaintiff notes that Green Tree's motion is heavily dependent upon Mr. Derrick's declaration; but, Mr. Derrick was not disclosed as a potential witness with discoverable information under Federal Rule of Civil Procedure 26(a)(1). *Id*. at 14. Under these circumstances, Plaintiff contends that an award of summary judgment would be prejudicial. *Id*. at 15. The Court, however, need not reach that issue, because summary judgment is not appropriate, as further discussed *infra*.

(emphasis added). Mr. Derrick goes on to explain that "Green Tree [would] pay the outstanding taxes and insurance premiums from the escrowed payments." *Id.* Mr. Derrick's statements are equivocal regarding the principal purpose of Green Tree's business. Indeed, from his description, a jury could find that Green Tree regularly provides debt collection services, or that Green Tree services[3] loans in default.[4] *Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 119 (3d Cir. 2007) (finding that the defendant, who only serviced 89 out of 141,597 mortgages in default during a three month period, was sufficient for the purposes of finding that the defendant regularly collected on defaulted loans). Significantly, while this case stands on its own facts, this finding is consistent with numerous district court decisions, wherein Green Tree has been determined to be a debt collector. *See, e.g.*, *Ordonez v. Green Tree Servicing LLC*, No. 14-1284, 2016 U.S. Dist. LEXIS 88763 (D. Nev. July 7, 2016); *Napolitano v. Green Tree Servicing, LLC*, No. 15-0160, 2016 U.S. Dist. LEXIS 14122 (D. Me. Feb. 4, 2016); *Adu v. Green Tree Servicing, LLC*, No. 15-0012, 2015 U.S. Dist. LEXIS 182947 (N.D. Ga. Oct. 28, 2015); *Geary v. Green Tree Servicing, LLC*, No. 14-0522, 2015 U.S. Dist. LEXIS 35059 (S.D. Ohio Mar. 20, 2015). The Court, therefore,

---

[3]      Defendant is careful to point out that it was a "servicer," rather than an owner of Plaintiff's debt. A "servicer," according to Defendant, manages a loan which another entity owns, by, *inter alia*, collecting, interest, principal, and escrow payments on behalf of that entity. *See* Daugherty's Dep., T13:11-T15:7. This definition further creates an issue of fact as to whether Defendant is a creditor.

[4]      While not determinative, the Court notes that, in both the May 1 and May 3 letters, Green Tree self-identifies as a debt collector: "This communication is from a debt collector. It is an attempt to collect a debt and any information obtained will be used for that purpose." Moreover, in the May 3 Letter, Green Tree included a detachable payment stub, for Plaintiff to submit, in the amount of $2,124.03. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014) ("It is reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt.").

finds that there is a genuine issue of material fact as to whether Green Tree is a creditor under the FDCPA. Summary Judgment on this basis is not appropriate.

**E.** **15 U.S.C. 1692g**

Finally, Defendant argues that, even if the FDCPA is applicable, Defendant's communications with Plaintiff are not in violation of that statute, because they do not contain inconsistent information. Def.'s Motion for Summary Judgment, at 8-14. Defendant, in raising this argument, first maintains that the May 1 and May 3 Letters serve different purposes under the law; the former letter, wherein the amount of the debt owed is included, constitutes the debt validation notice required under 15 U.S.C. 1692g, while the latter letter, in contrast, constitutes the notice of transfer of servicing required under 12 U.S.C. § 2605c of the Real Estate Settlement Procedures Act ("RESPA"). *Id*. at 9. According to Defendant, because of this legal distinction, the May 3 letter, which solely serves to provide notice under RESPA, cannot be in violation of the FDCPA. *Id*. Second, Defendant argues that, although the May 1 and May 3 letters include various numeric figures, they pertain to different aspects of the mortgage, such as the principal and interest payments owed thereunder. *Id.* at 10-12. In that regard, because Plaintiff understood that her loan included both principal and interest payments, as she admitted in her deposition, Plaintiff could not have been misled by Green Tree's communications. *Id*. at 10-12. Finally, to the extent that the May 1 Letter failed to accurately state the amount of the debt, Defendant maintains that this error is immaterial, and, thus, not actionable under the FDCPA. *Id*. at 13-14. The Court does not find Defendant's arguments persuasive.

Section 1692g mandates that debt collectors must provide to consumers a written notice of (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) a statement notifying the consumer that he or she has the right to dispute the validity of the debt

within thirty days. 15 U.S.C. § 1692g(a). The language in a communication providing this required information is known as the validation notice. *Wilson*, 225 F.3d at 353-54. The purpose of the validation notice is to inform debtors of their rights and obligations. *See id.* at 354.

A debt collector violates the FDCPA unless it conveys the statutorily required information in the validation notice. "[I]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Id.* (citations omitted). The Third Circuit has repeatedly explained that "a collection letter will not meet the requirements of the Act where . . . the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Id.* (citations omitted); *Caprio*, 709 F.3d at 149 (citations omitted); *Rosenau*, 539 F.3d at 222 (citations omitted). A validation notice is overshadowed or contradictory "'if it would make the least sophisticated [debtor] uncertain as to her rights.'" *Wilson*, 225 F.3d at 354 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2nd Cir. 1996)). Moreover, a collection letter "'is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Id.* (quoting *Russell*, 74 F.3d at 35).

As already mentioned, the Court, in a prior dismissal Opinion, found that Plaintiff had sufficiently stated FDCPA claims under §§ 1692e and 1692g, because: (1) the May 1 Letter failed to effectively convey the debt; and (2) the May 3 Letter contained contradictory information. First, with respect to the initial communication, I explained that the May 1 Letter did not set forth how the alleged debt was calculated; rather, it simply stated: "[a]s of April 30, 2010, you owe $307,606.12." I reasoned that, assuming the May 3 Letter correctly stated a total balance of $210,905.11, the least sophisticated debtor could reasonably question how he or she allegedly owed approximately $100,000 more than the original debt. Therefore, because an explanation as

to the determination of the debt was absent from the May 1 Letter, the Court found that the Letter failed to comply with the "amount of debt" provision under § 1692g of the FDCPA.

Moreover, to the extent that Defendant effectively conveyed the debt, the Court held that its subsequent communication to Plaintiff contained contradictory information which would confuse the least sophisticated debtor. For example, as I noted, the May 1 Letter stated "YOU OWE $307,606.12"; on the other hand, the May 3 Letter included an "initial payment coupon" with the heading "TOTAL DUE $2,124.03," and, in a separate section, stated "Principal Balance: $210,905.11." Because these numeric figures, pertaining to the amount of the loan, were provided in separate letters, I found that the least sophisticated debtor could reasonably question whether the amount of debt owed was $307,606.12 or $210,905.11. I further found that, because the May 1 Letter used language stating "you owe $307,606.12," while the May 3 Letter used language stating "total due $2,124.03," the least sophisticated debtor could also reasonably question whether both amounts were immediately due. Thus, Plaintiff's claim, under § 1692g, was also sufficiently pled on these grounds.

On this Motion, Defendant first contends that the letters are consistent, because they provide different functions under the law. Defendant reasons that the May 1 Letter includes the validation notice, while the May 3 Letter, in contrast, includes the notice of transfer, as is required under the FDCPA and RESPA, respectively. Defendant, therefore, submits that, based upon this legal distinction, the letters are not misleading under the least sophisticated debtor standard. However, this argument is not persuasive, because the Third Circuit has found that a validation notice can be "overshadowed or contradicted" by an accompanying message from a debt collector, during the 30-day period wherein a debtor is permitted to dispute an alleged debt. *Caprio*, 709 F.3d at 148.

Here, Defendant's initial Letter to Plaintiff, containing the validation notice, was sent on May 1, and Defendant's subsequent Letter was sent on May 3. Thus, Defendant's communications were clearly sent within 30 days, and may be read together in determining whether notice was effectively conveyed, regardless of the May 3 Letter's legal purpose. In that regard, for the reasons previously delineated by the Court, the notice included in the May 1 Letter may have been "overshadowed or contradicted" by the May 3 Letter, when viewed under the least sophisticated debtor standard; for instance, the May 1 Letter used language stating "YOU OWE $307,606.12" and the May 3 Letter used language stating "TOTAL DUE $2,124.03" and "Principal Balance $210,905.11." Based upon these various numeric figures, the least sophisticated debtor could reasonably be confused as to what amount was due under the loan. Moreover, Defendant's argument as to the function of the May 3 Letter under RESPA is of no significance. Indeed, to the extent that the May 3 Letter provided notice of transfer of servicing, Defendant's attempt to comply with the requirements of RESPA do not relieve it of its obligation to effectively convey a validation notice, as is required by the FDCPA. Tellingly, Defendant fails to cite any contrary authority or case law; accordingly, summary judgment on this basis is not appropriate.

Next, Defendant argues that the language used in the May 3 Letter stating "Principal Balance $210,905.11" is not misleading, because Plaintiff allegedly understood that her Loan is comprised of both principal and interest. Based upon this knowledge, therefore, Defendant contends that the $210,905.11 figure, which solely constitutes principal, could not have represented the entire balance of the Loan to Plaintiff. However, this argument is also not persuasive, because the least sophisticated debtor standard governs, not Plaintiff's subjective belief.

Significantly, the Third Circuit has held that the least sophisticated debtor "standard is an objective one . . . . " *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015). Thus, the Court need not inquire as to whether Plaintiff, individually, was confused as to the amount due under the Loan, or, in that same vein, whether Plaintiff was mislead by the letters upon which this action is based. *See id.* ("[T]he specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be . . . . [T]he FDCPA enlists the efforts of sophisticated consumers . . . to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act . . . .") (internal quotations and citations omitted) (emphasis in original); *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.") (internal citation omitted). Accordingly, the Court's analysis, with regard to Plaintiff's allegations, is confined to the following issue: whether the *least sophisticated debtor* would be confused upon reviewing the subject matter of Defendant's letters. Having previously made this determination, the Court need not reconsider it here, on the basis of Plaintiff's alleged subjective knowledge; accordingly, summary judgment, on this ground, is not appropriate.

Finally, Defendant maintains that, assuming the "May 1 Letter failed to accurately state the amount of the Loan or there was any discrepancy between the two letters," these errors are not material under the FDCPA. Def.'s Motion for Summary Judgment, at 13-14. The Court disagrees, and finds that the failure to accurately represent an amount owed in a communication to a debtor, or failure to provide an explanation as to how that amount was calculated, are material errors under the FDCPA.

In *Jensen,* the Third Circuit held that a false statement under § 1692e of the FDCPA must be material in order for it to be actionable. *Jensen*, 791 F.3d at 421. A false statement is material

if "it is capable of influencing the decision of the least sophisticated debtor." *Id*. at 421 (internal citation omitted). Although the bar for materiality is not "particularly high . . . , the materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." *Id*. at 421-22 (internal citation omitted).

Here, as noted above, Plaintiff asserts claims under §§ 1692e and 1692g of the FDCPA. Because Plaintiff's claims are based upon identical alleged facts and theories, the same analysis is applicable for the purpose of determining materiality under both provisions of that statute.[5] In that regard, the Court finds that the misleading information contained in Defendant's debt validation notice—which failed to clearly state an amount owed by Plaintiff, or to provide a calculation as to how that amount was determined—are material, because that information is capable of influencing the least sophisticated debtor. *Compare Cohen*, 2016 U.S. Dist. LEXIS 97016, at *12 (holding that the defendant's failure to correctly identify the owner of the debt was not material, because "the name of the owner of the debt would not have influenced even the least sophisticated debtor."). Indeed, the inconsistent and misleading information would hamper the least sophisticated debtor's ability to dispute whether a debt is owed, as he or she is entitled to do under the FDCPA. For

---

[5] The Court notes that the Third Circuit's materiality analysis in *Jensen* was confined to 15 U.S.C. § 1692e. Consequently, district courts, within this circuit, have concluded that materiality is not required for claims brought under the FDCPA's subsequent provisions. *See Cohen v. Dynamic Recovery Solutions*, No. 16-576, 2016 U.S. Dist. LEXIS 97016, at *14 (D.N.J. July 15, 2016) ("Given that the materiality requirement does not appear to apply to claims under § 1692g, Defendant has not proven that it is entitled to judgment as a matter of law on Plaintiff's claim under § 1692g."); *Youderian*, 2017 U.S. Dist. LEXIS 16585, at *38 ("Recent authority in this district, however, has confined th[e materiality] requirement to Section 1692e only.") (internal citation omitted). The Court, however, need not address this issue, because Plaintiff's theory of liability, under both §§ 1692e and 1692g, are identical. Therefore, because Defendant's alleged misrepresentations are material under § 1692e, as explained *infra*, the same conclusion is appropriate with respect to Defendant's alleged violation of § 1692g.

instance, a least sophisticated debtor who receives multiple communications providing various figures possibly representing the alleged debt, would be confused as to which of those debts to dispute. Moreover, due to the accumulation of interest, the amount due under the original loan and the amount being collected, typically constitute different figures. Thus, a debt collection letter which solely provides for the "total due," without providing an explanation as to how that amount was calculated, fails to provide the least sophisticated debtor with an adequate basis to dispute whether the alleged debt was properly configured, and, in turn, whether that debt should be challenged. *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 566 (7th Cir. 2004) (finding that a debtor's ability to dispute a debt was hindered by a debt collection letter that failed to provide how the alleged debt was calculated, because "an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely."). Thus, the errors in the May 1 and May 3 Letters are material, because they are "capable of influencing the decision of the least sophisticated debtor." *Jensen*, 791 F.3d at 421 (internal citation omitted).[6] Summary judgment, on this basis, therefore, is also not proper.

---

[6]      Defendant maintains that it complied with its obligations under the FDCPA, because the May 1 Letter contained the following "safe harbor" language: As of April 30, 2013, you owe $307,606.12. *Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.*" Def.'s Statement of Facts, ¶ 6, Ex. C to Ex. 1 (emphasis added). For support, Plaintiff cites *Miller v. McCalla*, 214 F.3d 872 (7th Cir. 2000), a non-binding Seventh Circuit opinion, wherein that court found that the inclusion of this statement in a debt collection letter satisfies the FDCPA's "amount of debt" provision. However, this argument is misplaced, because the Seventh Circuit's holding, in that opinion, was conditional upon the dissemination of accurate information. Indeed, as held by the court, there, a debt collector who provides the above stated language in a debt collection letter "will not violate the 'amount of the debt' provision [of the FDCPA], provided, of course, that the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." *Id.* at 876 (internal citations omitted). Accordingly, the incorporation of this "safe harbor" language does not transform an otherwise confusing debt validation notice.

Accordingly, because Defendant's motion for summary judgment is denied, I now turn to Plaintiff's Motion for Class Certification.

## II.     CLASS CERTIFICATION

### A.     Standard of Review

Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed. R. Civ. P. 23(a). Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Because Plaintiff here seeks certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as predominance and superiority. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

Importantly, the Third Circuit has instructed that "each Rule 23 component [must] be satisfied" in order for a court to certify a class. *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997) (Breyer, J., concurring in part and dissenting in part) (stating that Rule 23 decisions implicate "highly fact-based, complex, and difficult matters")). In that regard, "[c]lass certification is an especially serious decision, as it 'is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle [non-

meritorious] claims on the part of defendants).” *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001). In *Hydrogen Peroxide*, the Third Circuit urged district courts, where appropriate, to “‘delve beyond the pleadings to determine whether the requirements for class certification are satisfied.’” 552 F.3d at 316 (quoting *Newton*, 259 F.3d at 167). “An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met.” *Id*. Importantly, the predominance inquiry is especially dependent upon the merits of a plaintiff’s claim, since “the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.” *Id*. at 310-11 (internal quotations and citations omitted). “‘If proof of the essential elements of the cause of action requires individual treatment,’” then predominance is defeated and a class should not be certified. *Id*. (quoting *Newton*, 259 F.3d at 172); *see In re Constar*, 585 F.3d at 780.

**B.**     **Plaintiff’s Class Definition is Not an Impermissible “Fail-Safe”**

Before addressing Rule 23’s requirements for class certification,[7] Defendant, as a preliminary matter, argues that Plaintiff’s proposed class, as defined, constitutes an impermissible “fail-safe” class. Defendant’s Opposition to Plaintiff’s Motion for Class Certification” (“Def.’s Cert. Opp’n”), at 9-12. Defendant reasons that the “class definition is synonymous with assumed liability,” and, thus, wrongly requires that “the Court . . . first determine the merits of each putative class member’s FDCPA claim to ascertain who is in the class.” *Id*. at 12. Because of this

---

[7]     Plaintiff argues that the declaration of Bradford W. Hardwick, which is heavily relied upon by Green Tree, in opposing Plaintiffs Motion for Class Certification, is inadmissible. Plaintiff’s Reply in Further Support of Class Certification (“Pl.’s Reply Cert.”), at 2-3. For support, Plaintiff contends that, like Mr. Derrick, Mr. Hardwick was not disclosed as a potential witness with discoverable information, as is required under Fed. R. Civ. P. §26 of Civil Procedure 26(a)(1). *Id.* The Court, however, need not consider this issue, because even with the information provided by Mr. Hardwick, Plaintiff’s class is appropriate for certification, as further discussed *infra*.

deficiency, Defendant contends that certification cannot be granted. *Id.* This argument is without merit, as the language employed by Plaintiff in defining the class is legally sufficient.

A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734, 736 (9th Cir. 2010) (A fail-safe class is defined "in a way that precludes membership unless the liability of the defendant is established."). Stated differently, a "fail-safe" class is proposed to only include individuals who are "entitled to relief." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). District courts, therefore, have refrained from certifying a proposed class if the definition of the class "employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability." *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. July 31, 2015); *see, e.g.*, *Cox v. Sherman Capital LLC*, No. 12-1654, 2016 U.S. Dist. LEXIS 7400 (S.D. Ind. Jan. 22, 2016); *Mazzei v. Money Store*, 288 F.R.D. 45 (S.D.N.Y. 2012).

Indeed, courts have declined to grant certification when a proposed class constitutes a "fail-safe," because the proposed class presents both "logical and practical" problems under the law. *Hurt v. Shelby County Bd. of Educ.*, No. 13-230, 2014 U.S. Dist. LEXIS 116491, at *18, (N.D. Ala. Aug. 21, 2014). As succinctly explained by the Northern District Court of Alabama:

> On the logical front, the class definition is essentially circular. It defines its members on the presumption that such members have viable claims against the defendant. So, the class definition assumes what it ostensibly seeks to prove. This is itself problematic . . . . The problems compound, however, when one considers the practical complications such definitions introduce. First, they permit plaintiffs to circumvent res judicata and basically rig the certification process so that they cannot lose. That is, [e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment. . . . . This scenario is patently unfair to the defendant. Finally — and most obviously — a fail safe class

is unmanageable because the members of the class could only be known after a determination of liability.

*Hurt*, 2014 U.S. Dist. LEXIS 116491, at *18-19 (internal quotations and citations omitted). Although "fail-safe" classes are generally denied certification on these grounds, some courts, nevertheless, have allowed plaintiffs to amend their proposed class definition so that they are legally sufficient. *Messner*, 669 F.3d at 825 ("[T]he fail-safe problem is more of an art than a science . . . and often should be solved by refining the class definition rather than flatly denying class certification on that basis.") (internal citations omitted).

Courts have denied certification if the definition of the proposed class expressly states that the defendant engaged in culpable or prohibited conduct under the law. *See, e.g.*, *Mazzei*, 288 F.R.D. at 55 (impermissible fail-safe included "[a]ll similarly situated borrowers who . . . were charged the following fees *that were not permitted . . . .*") (alteration in original); *Cox*, 2016 U.S. Dist. LEXIS 7400, at *11 (impermissible fail-safe included "[a]ll Indiana citizens who were the subject of collection activity or activities *which violate the FDCPA . . . .*") (alteration in original); *Alhassid*, 307 F.R.D. at 690 (impermissible fail-safe included "borrowers . . . whose loans . . . were charged by [the defendant] for 'property inspection' fees, *more times in a one year period, than allowed* by HUD Guidelines and/or [the defendant's] own internal Policies and Procedures") (emphasis added); *Eager v. Credit Bureau Collection Servs.*, No. 13-30, 2014 U.S. Dist. LEXIS 96379, at *5-6 (W.D. Mich. July 16, 2014) (impermissible fail-safe included "every . . . defendant in a lawsuit filed . . . in any Michigan court, in which the complaint to initiate the lawsuit . . . *falsely stated* that the plaintiff had taken assignment of the claims . . . .") (emphasis added).

Here, Plaintiff's proposed class, however, is legally sufficient, and does not constitute an impermissible "fail-safe" class, because the definition uses language that is legally objective and

non-conclusory in defining the potential members. More specifically, Plaintiff, on this motion, seeks certification of the following class of individuals:

> All New Jersey consumers who were sent initial letters and/or notices from GREEN TREE concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was transferred to Green Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated.

> and/or

> All New Jersey consumers who were sent initial letters and/or notices from GREEN TREE concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was transferred to Green Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated, and was sent an additional letter/notice within 30 days of the initial letter/notice which provided 'Monthly Payment Information', and/or the 'Principal Balance' and/or the 'Escrow Balance.'

Significantly, based upon a plain reading, the language contained in the proposed class definition does not state that Green Tree's conduct was impermissible or prohibited by the FDCPA, or that its communications contained misleading or contradictory information. Instead, because Plaintiff's definition uses objective language and criteria in defining the potential class, it does not presume that its members are "entitled to relief."

Furthermore, the final resolution of this case will result in a final judgment as to all members of the proposed class. That is, if a jury finds that the disputed letters do not violate the FDCPA, the proposed class members, here, would be barred from relitigating identical FDCPA claims against Defendant, under the principles of *res judicata* and collateral estoppel. *Cox*, 2016 U.S. Dist. LEXIS 7400, at *13 ("The class definition must be such that all (except those who opt out) are as much bound by an adverse judgment as by a favorable one.") (internal quotations and citation omitted). Accordingly, Plaintiff's proposed class definition is not one that is "fail-safe."

*Geary*, 2017 U.S. Dist. LEXIS 93000, at *32 (holding that the proposed class, which included individuals who received debt collection letters from Green Tree, during a specified period of time, did not constitute an impermissible fail safe, because the class could be ascertained by reference to "objective factors").

### C.    Ascertainability

Despite having already identified over 9,177 potential class members, Defendant, next, argues that the class is unascertainable, because "a file-by-file review" of the loan records are necessary. Def.'s Cert. Opp'n, at 15. Specifically, Defendant reasons that the potential class size will decrease, after some members are excluded, on the basis that their loans fall within an applicable exception under the FDCPA. For example, Defendant avers that the potential class group might include loans which are current, or, in addition, loans which are not for personal use, *i.e.,* business, rental, or investments purposes. *Id.* at 16. However, in order to make these determinations, Defendant maintains that a manual review of the potential class members' loan origination files is required since a searchable electronic database does not exist. *Id.* at 15-16. Thus, as a result of these difficulties, Defendant argues that a feasible mechanism for ascertaining class membership has not been established by Plaintiff. The Court disagrees.

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) (internal citations omitted). The Third Circuit, for example, has held that this requirement serves three significant objectives. *Id.* "First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members." *Id.* (internal quotations and citation omitted). Second, "it

protects absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2) in a Rule 23(b)(3) action." *Id.* (internal citation omitted) And, finally, like the restriction against "fail-safe" classes, an ascertainable class "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Id.* (internal citations omitted).

To effectuate these objectives, and demonstrate that a class is ascertainable, the Third Circuit has implemented a two-fold inquiry requiring a plaintiff to show: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (internal quotations and citation omitted). Significantly, in demonstrating ascertainability, a plaintiff need not identify every class member at the class certification stage; instead a plaintiff is required to show that "class members *can* be identified." *Id.* (internal quotations and citation omitted) (emphasis in original). In that connection, "[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* (internal quotations and citation omitted).

Here, Plaintiff has satisfied the requirement of defining an ascertainable class. In determining whether a class is ascertainable, the Third Circuit has advised that courts should "focus[] on whether objective records [can] readily identify class members." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 n.5 (3d Cir. 2014); *see, e.g.*, *Marcus, LLC*, 687 F.3d at 593-94 (holding that the proposed class "raises serious ascertainability issues," because "defendants' records would not indicate" class members); *Carrera v. Bayer Corp.*, 727 F.3d 300, 309 (3d Cir. 2013) ("[T]here is no evidence that a single [class member] could be identified using records of customer membership cards or records of online sales. There is no evidence that [the defendants] even have records for the relevant period."). In that regard, Plaintiff's class definition, as stated

above, is comprised of objective criteria and factors, and, therefore, is capable of being ascertained from Defendant's business records. Individuals who fall within Plaintiff's description of the class include: (a) consumers who received a debt collection letter(s) from Green Tree pertaining to a debt owed to Fannie Mae and/or Bank of America; (b) the debt was in default at the time of transfer; and (c) the amount of the outstanding debt was not itemized, and/or the consumers were sent an additional letter containing various numeric figures during a specific 30-day period. Accordingly, Plaintiff's class description sets forth objective bases for Defendant in ascertaining whether an individual, whose debt it currently services, or had serviced, meets this class definition. In fact, Defendant, itself, has demonstrated that the class is ascertainable, because it has already identified over 9,177 potential class members:

> Green Tree has researched the number of New Jersey consumers that received at least two letters within the first 30 days of the transfer of loan servicing and who *were in default* at the time of the transfer. At this time, Green Tree believes there are 9,177 consumers that fall within this classification. Green Tree also believes the first letter provided the total amount due while the second letter provided monthly payment information and the principal and escrow balances.

Certification of Joseph K. Jones, Esq. (dated Dec. 9, 2016) ("Jones Cert."), ¶ 14, Ex. A (emphasis added). Because the class is clearly ascertainable by objective criteria, as demonstrated by Defendant, Plaintiff need not identify an alternative method to ascertain potential class members. In that regard, the Court finds that the ascertainability requirement has been met. *Datta v. Asset Recovery Solutions, LLC*, No. 15-0188, 2016 U.S. Dist. LEXIS 36446, at *31 (N.D. Cal. Mar. 18, 2016) (finding that the class was sufficiently ascertainable, because the parties "identified at least 10,000 putative class members who received the same form letter during the class period.").

Nevertheless, despite having already identified over 9,177 consumers, Defendant argues that the class is not ascertainable, because it still needs to determine whether the serviced loans were in default at the time of transfer, and whether the loans were for personal use. Defendant

contends that, in either event, the consumer's loan would be excluded from the FDCPA, and removed from the purported class. Defendant claims that this process would require an unduly burdensome file-by-file review of the applicable loan records.[8]

Significantly, Defendant does not provide a sworn affidavit or declaration, from a corporate representative who would attest that Defendant cannot determine from the records whether a debtor should be excluded from the class, based on the objective factors proposed in the class definition. Moreover, the Court would be hard-pressed in holding that these loan records are non-existent or inaccessible, as Defendant's "research" has already identified over 9,177 potential class members. In fact, Defendant's concern, with respect to the status of each debt, is undercut by Defendant's own admission: "Green Tree has researched the number of New Jersey consumers . . . who *were in default at the time of the transfer*. At this time, Green Tree believes there are 9,177 consumers that fall within this classification." Jones Cert, ¶ 14, Ex. A (emphasis added). Therefore, the status of the loans serviced by Defendant have already been determined.

Likewise, Defendant's argument that it is difficult to ascertain the purpose of each potential class member's loan is also unavailing. For one, numerous district courts have found that a class,

---

[8]    In a Letter Order issued on November 9, 2016, the Magistrate Judge resolved a discovery dispute between Plaintiff and Green Tree. *See* Letter Order dated November 9, 2016, [Doc. # 52]. In that Order, the Magistrate Judge denied Plaintiff's discovery request, which sought information regarding the potential class members from Defendant's records. In connection with that request, Plaintiff proposed certain methods to identify potential class members. The Magistrate Judge denied Plaintiff's discovery request, on the basis that it was overly burdensome. Now, Defendant contends that the reasoning, as set forth in the Letter Order, should apply to Plaintiff's Motion for Class Certification. Mainly, that the methods proposed to the Magistrate Judge in identifying a potential class member is unduly burdensome. However, the Court is not persuaded by this argument, because, in the Letter Order, the Magistrate Judge specifically stated that: "this Court is not determining whether Plaintiff has met its burden for class certification purposes . . . . Simply put, this Court is determining whether Plaintiff is entitled to the requested information it seeks to meet its burden." Accordingly, the reasoning, as provided in the Letter Order, solely pertained to discovery issues, as opposed to issues concerning the certification of a class. The latter inquiry falls within my province.

in the context of a FDCPA action, is ascertainable, even where a question exists as to whether the loan is consumer based. *Wilkerson v. Bowman,* 200 F.R.D. 605, 609 (N.D. Ill. 2001) ("[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA.") (internal citations omitted); *Gold v. Midland Credit Mgmt.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) ("However, as many other courts have determined in considering class certification under the FDCPA, the mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification."); *see also*, *Butto v. Collecto Inc.*, 290 F.R.D. 372, 382 (E.D.N.Y. 2013); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000). Moreover, it appears that Defendant has already conducted this inquiry. Defendant, by its own admission, concedes that the 9,177 loans that it has identified belong to potential class members who are "New Jersey *consumers.*" Jones Cert., ¶ 14, Ex. A (emphasis added). Under the applicable provisions of the FDCPA, "the term 'consumer' means any natural person obligated or allegedly obligated to pay any debt," and "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . . ." 15 U.S.C. 1692(a)(3), (5) (emphasis added). Thus, based on this set of definitions, the potential class members, as identified by Defendant, include individuals whose loans are for a purpose that the FDCPA was intended to govern.

Finally, to the extent that the term "consumer" was used in a general sense by Defendant, the Court notes that Defendant failed to provide a sworn affidavit or certification that attests to the fact that it is impossible to ascertain the purpose of each class member's loan. Rather, Defendant

argues that this task is difficult, because the loans are not subject to an electronic searchable database. According to Defendant, therefore, a file-by-file review is necessary to sort through whether a particular loan is exempt from the FDCPA. However, such an unsubstantiated argument cannot be credited. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) ("If class actions could be defeated because membership was difficult to ascertain at the class certification stage, there would be no such thing as a consumer class action.") (internal quotations and citation omitted); *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 666 (7th Cir. 2015). Moreover, Defendant's position is undermined by an email, in which Green Tree's attorney admitted that the class can, in fact, be ascertained without conducting a file-by-file review:

> Following up on our correspondence with the Court and the December 16 conference, we have been following up with Green Tree on whether the requested data could be provided after a file-by-file review. Based upon that further review, *we now believe we can in fact provide the number of class members absent a file-by-file review* and are working on doing so.

Reply Certification of Joseph K. Jones, Esq., (dated January 10, 2017) ("Jones Reply Cert."), ¶ 4, Ex. B (emphasis added). Defendant has not subsequently retracted this statement. Thus, it appears that Defendant is capable of ascertaining the putative class members, as demonstrated by its own admission.

### D. Numerosity

Defendant also contends that the class is not sufficiently numerous. Def.'s Cert. Opp'n, at 19. For support, Defendant reiterates the same arguments as above, and submits that that class size may decrease, upon further review. *Id*. at 20. With respect to numerosity, a party need not precisely enumerate the class members to proceed as a class action. *In re Lucent Techs. Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number

of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[1][a] (Matthew Bender 3d ed. 1999). Here, the requirement of numerosity need only be addressed briefly. As stated, this showing merely requires an identification of 40 potential plaintiffs; Defendant, itself, has ascertained over 9,177 potential class members. Although, upon further review, the class size may decrease, Defendant has not adequately demonstrated that the class will reduce by 99% after accounting for all applicable exemptions under the FDCPA, nor does the Court find this outcome probable. *Korrow v. Aaron's Inc.*, No. 10-6317, 2013 U.S. Dist. LEXIS 157272, at *18 (D.N.J. July 31, 2013) ("The Court finds that the potential class will likely involve thousands of class members, and therefore finds the numerosity requirement satisfied.").

### E.     Commonality

Next, Defendant argues that the potential class does not satisfy the commonality or typicality requirement, because the bona fide error defense applies. Def.'s Cert. Opp'n, at 21-22.

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for establishing commonality is straightforward: "[t]he commonality requirement will be satisfied if the named plaintiffs share at least *one* question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)) (emphasis added). Indeed, as the Third Circuit stressed, "[i]t is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 597 n.10. Thus, there is a low threshold for satisfying this requirement. *Newton*, 259 F.3d at

183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the threshold of commonality is not high).

Moreover, this requirement does not mandate that all putative class members share identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), and that "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal,* 43 F.3d at 56. In that regard, class members can assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice. *Hassine*, 846 F.2d at 177-78. "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

Here, Plaintiff's allegations, as pled in the Complaint, raise common questions of law and fact. Specifically, Plaintiff asserts that she received two debt collection letters on May 1 and May 3, respectively, which did not to comply with the FDCPA, because: (a) the May 1 Letter failed to explain how the purported amount of debt was calculated; and (b) the amount of debt provided in the May 1 Letter was contradicted by the amounts listed in the May 3 Letter. Moreover, during the class period, debt communications that failed to include an itemized description of the debt, and contained inconsistent information, were submitted from Green Tree to the potential class members. Therefore, the success of Plaintiff's claims, in addition to the claims of the potential class members, are contingent upon whether the subject matter of Defendant's communications violated two provisions of the FDCA, *i.e.,* §§ 1692g and 1692e. This shared set of facts and theories of liability support a finding of commonality. *Weissman v. Philip C. Gutworth, P.A.*, No. 14-0666, 2015 U.S. Dist. LEXIS 67477, at *6 (D.N.J. May 26, 2015) ("The commonality requirement is satisfied here because Plaintiff and all class members received debt collection letters from

Defendants which included one of two specific statements. Questions of law regarding whether these statements violated the FDCPA are common to all.").

With respect to typicality, Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims of the class." *See* Fed. R. Civ. P. 23(a)(3). Typicality acts as a bar to class certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Id.* at 184. In other words, the typicality requirement is satisfied as long as representatives and the class claims arise from the same event or practice or course of conduct and are based on the same legal theory. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").

Here, Plaintiff's claims and the claims of the potential class members are typical, for the same reasons that they are common. Significantly, on this motion, Defendant does not argue that the contents of the May 1 and May 3 letters are substantially different from the letters which were submitted to the other class members. To the contrary, Defendant concedes that the disputed letters are similar; in that, like the May letters received by Plaintiff, written communications submitted to the potential class members provide a total amount due, without explanation, and other numeric figures pertaining to the debt's interest and payment due. Indeed, Defendant describes the letters which were submitted to the potential class in the following manner: "Green Tree also believes the first letter provided the total amount due while the second letter provided monthly payment

information and the principal and escrow balances." Jones Cert, ¶ 14, Ex. A. Thus, Plaintiff's allegations, in this matter, are typical of the claims of the class—that is, they pertain to debt communications from Defendant, which are similar in form and substance. To that end, the reasons as to why the May letters are allegedly confusing or misleading under the least sophisticated debtor standard, are equally applicable to the letters which the potential class members received. And, Plaintiff's claims and those of the potential class member share the same theories of liability, *i.e.,* §§ 1692g and 1692e of the FDCPA. The typicality requirement, therefore, has also been met. *Weissman*, 2015 U.S. Dist. LEXIS 67477, at *6-7 ("Plaintiff's claims are identical to the class claims. They are predicated on the same legal and factual circumstances: Defendants' alleged practice of mailing collection letters with legally deficient language.").

Nevertheless, Defendant argues that commonality and typicality requirements cannot be met, because it has raised a bona fide error defense under the FDCPA. Specifically, the FDCPA, in pertinent part, provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). According to Defendant, the bona fide error defense is applicable here, because some of the loans may have been paid in full before Green Tree acquired the servicing rights. Def.'s Cert. Opp'n, at 22. Defendant's argument is wholly without merit. First, Defendant did not argue its bona fide error defense in either of its motions for dismissal or summary judgment; rather, Defendant, for the first time, raises it in opposition to Plaintiff's class certification. And, significantly, Defendant has not established that its alleged violation under the FDCPA was inadvertent, or that it has implemented and enforced a system of procedures designed to avoid legal error. To the contrary, Defendant, on this motion, solely argues, in a conclusory manner, that

it "has raised a bona fide error defense," with no evidentiary support. *Id.* at 21. More importantly, based on the record, Defendant cannot, in good faith, raise this defense, because, as it has conceded, the loans of the proposed class members were in default, *i.e.*, not paid in full, at the time of transfer. *Geary*, 2017 U.S. Dist. LEXIS 93000, at *18 (rejecting Green Tree's defense of bona fide error, because "at the time the letters were mailed to the approximately 31,000 customers the accounts were in default."). Defendant's unsubstantiated bona fide error defense, therefore, is inapplicable.

### F. Adequacy

Next, Defendant argues, generally, that Plaintiff will not adequately protect the interests of the class, for "the reasons stated in Green Tree's Motion for Summary Judgment . . . . " Def.'s Cert. Opp'n, at 23.[9] Defendant likewise argues that Plaintiff's counsel cannot adequately represent the interests of the class, because they are the named defendants in a class action lawsuit, in which they are accused of filing baseless actions in order to extract favorable settlements. The Court finds both of these arguments without merit. *Id.* at 23-24.

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (internal quotations and citation omitted).

---

[9] The Court, as discussed *supra*, has already rejected Defendant's arguments on summary judgment.

This requirement has traditionally required a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second the plaintiff's counsel must be qualified to represent the class. *In re General Motors*, 55 F.3d 768, 800 (3d Cir. 1995); *Newton*, 259 F.3d at 187 (same). A named plaintiff is "adequate" if his interests do not conflict with those of the Class. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives. I find that both prongs of the adequacy requirement are satisfied here.

As to the first inquiry, Plaintiff will fairly and adequately represent the interests of the class. In fact, Defendant fails to identify a specific conflict between Plaintiff and the potential class members. Nor does a conflict exist between them, as this dispute against Defendant stems from the same alleged unlawful conduct, *i.e.*, the misleading content of Defendant's debt collection letters. Likewise, Plaintiff does not assert an additional basis for liability against Defendant, aside from claims under §§ 1692e and 1692g of the FDCPA, and, relatedly, does not seek any additional damages from Defendant. Plaintiff's interests, therefore, are congruent with, and not antagonistic to, those of the other potential class members. *See, e.g.*, *Yedlowski v. Roka Bioscience, Inc.*, No. 14-8020, 2016 U.S. Dist. LEXIS 155951, at *18 (D.N.J. Nov. 10, 2016).

Additionally, Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys.*, Inc., No. 06-3826, 2008 U.S. Dist. LEXIS 61439, at *7 (D.N.J. Aug. 12,

2008). Here, the Court has reviewed the credentials of proposed class counsel, Jones, Wolf, &

Kapasi, LLC ("Class Counsel"). Class Counsel has handled numerous consumer class actions and

other complex consumer litigations, including FDCPA cases, in the states of New Jersey and New

York. *See, e.g.*, *Hegab v. Family Dollar Stores, Inc.*, No. 11-1206, 2015 U.S. Dist. LEXIS 28570,

at *9-10 (D.N.J. Mar. 9, 2015) ("Class Counsel . . . have extensive experience litigating complex

class actions . . . . Thus, the Court finds that Class Counsel has the qualifications, experience, and

ability to conduct the litigation."). The Court, therefore, finds that Class Counsel is capable of

adequately representing the interests of the class. Moreover, Defendant's argument that counsel is

not adequate solely because it is named as a defendant in a lawsuit does not warrant consideration.

Although Plaintiff's counsel has been named as a defendant in a class action proceeding, the Court

notes that the suit is at the pleading stage, and the merits of the plaintiffs' claims have not been

examined. In fact, Plaintiff's counsel has recently moved for Rule 11 sanctions in that matter. And,

more to the point, Defendant fails to cite a case, or any other authority, wherein Class Counsel was

deemed inadequate, based solely upon mere *allegations*, in a separate and unrelated matter.

Accordingly, I find that Plaintiff has met the element of adequacy.[10]

### G. Predominance

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the

proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3),

the Court must find that: [T]he questions of law or fact common to the members of the class

---

[10] Defendant also maintains that Class Counsel is inadequate, because counsel previously filed an unrelated putative class action that was dismissed under Fed. R. Civ. P. 12(c). *Riccio v. Alliance One Receivables Mgmt.*, No. 13-4445, 2014 U.S. Dist. LEXIS 143788 (D.N.J. Oct. 9, 2014). This argument, however, is not persuasive, because Class Counsel has successfully litigated other putative class actions, and, in that regard, Defendant has not presented any valid arguments why more weight should be attributed to the *Riccio* case than those where a favorable decision was obtained by Class Counsel.

predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, both considerations weigh in favor of class certification.

In determining whether common questions predominate, courts have focused on the claims of liability against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *Smith v. Suprema Specialties, Inc.*, No. 02-168, 2007 U.S. Dist. LEXIS 30001, at *30 (D.N.J. Apr. 23, 2007) (citing cases) ("The focus of the predominance inquiry is on liability, not damages."). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. See 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788, at 528 (1986).

Here, Rule 23(b)'s predominance requirement has been satisfied. Indeed, Defendants have identified over 9,177 potential class members who allegedly received a debt communication which either: (a) failed to explain how the debt owed was calculated, and/or (b) was contradicted by information provided in a subsequent debt communication from Green Tree. Therefore, the potential class members' claims turn on the same legal determination, *i.e.*, whether the content of these communications are in violation of §§ 1692g and 1692e of the FDCPA, respectively. Therefore, because identical, or, substantially similar, debt collection letters are challenged by the class members, the predominance requirement of Rule 23(b) has been met. *Stair v. Thomas & Cook*, 254 F.R.D. 191, 201 (D.N.J. 2008) ("Because the class members here all share a common nucleus of fact—the receipt of nearly identical debt collection letters—and the viability of their claims turn on a single legal determination as to the conformity of the letters with section 1692g,

the Court finds that this class satisfies Rule 23(b)(3)'s predominance requirement."); *see also Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 U.S. Dist. LEXIS 79795, *18-19 (D.N.J. June 12, 2014); *Williams v. Pressler & Pressler, LLP*, No. 11-7296, 2013 U.S. Dist. LEXIS 139643, at *28-30 (D.N.J. Sept. 27, 2013); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 U.S. Dist. LEXIS 129587, at *21-22 (D.N.J. Sept. 10, 2013); *Passeggio v. Cosmetique Inc.*, No. 98-1774, 1999 U.S. Dist. LEXIS 7607, *27-28 (E.D.N.Y. Apr. 30, 1999).

Nevertheless, Defendant contends, in a conclusory fashion, that the following issues will predominate: (a) whether the initial debt collection notice mailed to a class member was sent before the effective date of the servicing transfer; and (b) whether a class member's loan servicing could have been transferred after origination to at least one other entity prior to the assignment to Green Tree. Def's Cert. Opp'n, at 25-26. However, these arguments are merely hypotheticals which Defendant has *invented* in order to defeat the certification of Plaintiff's proposed class. Indeed, the proposed class only contemplates consumers who were sent communications concerning a debt which was originally owed to a creditor and in default at the time it was transferred to Green Tree. In that regard, Defendant cannot propose various situations that could have occurred, without pointing to any evidence, despite having gone through discovery, and then ask the Court to inquire whether those unsubstantiated situations did, in fact, occur. Defendant's attempts to create issues of fact when there are none, are wholly without merit.

And, more importantly, the debt collection letter which was sent to the potential class members undermines Defendant's claimed hypothetical scenarios. Indeed, in the May 1 Letter, submitted to Plaintiff, Green Tree states: "Dear Valued Customer: The servicing of your account was *transferred from Bank of America N.A. to Green Tree on May 1, 2013*. We are pleased to Welcome you to Green Tree." Def.'s Statement of Facts, ¶ 6, Ex. C to Ex. 1 (emphasis added).

Therefore, based on this communication, which is dated May 1, 2013, it is clear that Green Tree did not submit the initial debt communication, prior to the effective date of a servicing transfer; rather, it was sent on the same day. Furthermore, it is also clear that the debt was transferred directly from a creditor, *i.e.*, Bank of America, to Green Tree. Stated differently, the loan was not transferred to any other debt collector prior to Green Tree's servicing of the loan.[11] Significantly, because Defendant concedes that the communications submitted to the potential class members are substantially similar to the May 1 Letter which Plaintiff received, those issues, raised by Defendant here, do not have any bearing on the element of predominance.[12] *Geary*, 2017 U.S. Dist. LEXIS 9300, at *22-27 (rejecting these identical arguments based on Green Tree's alleged violations of the FDCPA in the context of determining predominance on a motion for certification).

As to the superiority inquiry, Rule 23 sets out several factors which to consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced

---

[11] It appears that parts of Defendant's briefing are unrelated to the issues in this case, and, as such, those portions may have been inadvertently "copied" from briefs not filed here.

[12] Defendant additionally argues against predominance, because the Court must determine (a) whether the servicing transfer notice sent to the class members was a debt collection communication, and (b) whether every class member was deceived or mislead by the debt communications. Def.'s Cert. Opp'n, at 25-26, 30-32. The Court is not persuaded by either of these arguments. With respect to Defendant's first argument, the Court, in a prior Opinion, found that Defendant's communication to Plaintiff constituted debt collection activity. *Grubb v. Green Tree Servicing, LLC*, No. 13-7421, 2014 U.S. Dist. LEXIS 100886, at *13-18 (D.N.J. July 24, 2014). Because Defendant concedes that the class members received substantially similar communications, the Court need not determine whether each member's letter also constitutes debt collection activity. Moreover, with respect to Defendant's second argument, under the FDCPA, the Court is only required to determine whether Defendant's communications are misleading or confusing to the least sophisticated debtor, which is an objective standard. Having answered that question in the affirmative in my discussion, *supra*, in the summary judgment context, the subjective belief of every individual class member is not relevant. Therefore, a lack of predominance, on these bases, is not appropriate.

by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Essentially, the superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co.*, 148 F.3d at 316 (internal quotations and citations omitted).

All of these factors weigh in favor of certification. With respect to the first two factors, Defendant does not contend, nor does the current record show, that class members have filed various actions against Green Tree, wherein it is alleged that the debt communications at issue are in violation of §§ 1692e and 1692g of the FDCPA. *Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 U.S. Dist. LEXIS 79795, at *24, (D.N.J. June 12, 2014) (noting that there is no "assertion that any individual class member has filed a complaint against Defendant."). Therefore, given that this appears to be the only action, or, at a minimum, one of the few actions commenced against Green Tree, in connection with the letters at hand, I find that no class member has demonstrated an interest in controlling the prosecution of this suit in this forum or elsewhere. *See, e.g.*, *Stair*, 254 F.R.D. at 201. Nevertheless, to the extent that the class members have filed identical actions against Green Tree, the Court notes that this circumstance, alone, would not preclude a finding of superiority. *Williams v. Pressler & Pressler, LLP*, No. 11-7296, 2013 U.S. Dist. LEXIS 139643, at *30 (D.N.J. Sept. 27, 2013) ("As intended by Congress, FDCPA is self-enforcing by private attorney generals . . . ; the existence of multiple suits is a feature, not a bug.") (internal quotations and citations omitted).

While Defendant submits that consumers routinely bring individual lawsuits under the FDCPA, the desirability of concentrating litigation in this forum weighs in favor of superiority,

particularly "in light of the limited quantum of damages available on any class member's claim . . . ." *Stair*, 254 F.R.D. at 201. Indeed, because cases, wherein FDCPA violations are alleged, typically result in an insignificant amount of monetary damages, "individualized prosecution by the class members would be inefficient and . . . therefore unlikely." *Id*.; *Little-King*, 2013 U.S. Dist. LEXIS 129587, at *19-20 ("First, the expense of individual actions in this FDCPA action, weighed against the potential recovery, would likely be inefficient and cost prohibitive."); *Geary*, 2017 U.S. Dist. LEXIS 93000, at *28 ("The Court finds that the class device is superior in this case. Plaintiffs are unlikely to be willing or able to front litigation costs and subject themselves to the financial exposure inherent in litigation for the typically low payout in these types of cases."); *Passeggio v. Cosmetique Inc.*, No. 98-1774, 1999 U.S. Dist. LEXIS 7607, at *16-17 (E.D.N.Y. Apr. 30, 1999) ("The consumers may lack the finances to bring a lawsuit, and such a lawsuit may not be economically feasible given the small awards recoverable in an individual action.").

With respect to the last factor, the record does not present any inherent difficulties in permitting class certification here. Nevertheless, Defendant argues against superiority, because "Plaintiff does not seek actual damages." Def.'s Cert. Opp'n, at 33. Therefore, according to Defendant, "[i]individual members of the putative class could assert actual damage claims and their interests would not be advanced by Plaintiff." *Id.* However, the Court notes that, a potential sub-class, if necessary, can be created, to include the class members that have sustained actual damages in response to Green Tree's letters.

As a final note, Defendant contends that certification is not appropriate, because "Plaintiff fails to establish why arbitrarily limiting the class to New Jersey consumers is superior to certification of a nationwide class of consumers." *Id*. However, this argument is without any merit. Indeed, the Court is not aware of any case law or authority that requires a Plaintiff to bring only a

nationwide class action that involves the FDCPA, nor does Defendant cite to any support for this contention. To the contrary, in addressing statewide class actions under the FDCPA, the Seventh Circuit has found:

> The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult. Further, if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations . . . In any event, the case before us does not present multiple or serial class actions to recover for the same misconduct. Hence, it would be premature to require a nation-wide class at this juncture.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, at 344 (7th Cir. 1997). Likewise, in the instant matter, the only class action against Green Tree, in connection with the letters in dispute, appears to be the one brought against Defendants here—Defendant does not contend otherwise. Therefore, the Court need not consider at this time whether the scope of the class should be broadened. The superiority requirement has been met.[13]

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Class Certification is **GRANTED**.

Dated: July 26, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

---

[13] In any event, Plaintiff has asserted that it is receptive to broadening the scope of the class, if needed: "if Green Tree wants to agree to enlarging the class to other states, Plaintiff would be willing to consider it and the parties are free to stipulate it." Pl.'s Reply Cert., at 17.